**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| LLOYD EVAN BRADOW D/B/A PENINSULA CONTRACTING AND ROOFING, individually and on behalf of all others similarly situated, | No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| CEDAR SHAKE & SHINGLE BUREAU, a Washington non-profit corporation; WALDUN FOREST PRODUCTS, LTD., a British Columbia corporation; ANBROOK INDUSTRIES LTD, a British Columbia corporation; and G&R CEDAR LTD., a British Columbia corporation, | |
| Defendants. | |

CLASS ACTION COMPLAINT

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## TABLE OF CONTENTS

I.     NATURE OF THE ACTION ................................................................. 1

II.    JURISDICTION AND VENUE ............................................................. 4

III.   THE PARTIES ...................................................................................... 5

   A. PLAINTIFF .......................................................................................... 5

   B. DEFENDANTS ..................................................................................... 5

   C. NON-DEFENDANT CO-CONSPIRATORS .......................................... 7

   D. OTHER NON-PARTIES ..................................................................... 15

   E. FORMER CSSB MEMBERS ............................................................. 15

IV.    IMPACT ON UNITED STATES TRADE & COMMERCE ............. 19

V.     FACTUAL ALLEGATIONS ............................................................... 21

   A. THE RELEVANT PRODUCTS ........................................................... 21

   B. THE CSSB STRUCTURE, BYLAWS, AND MEETINGS ..................... 25

      1. The CSSB Board of Directors ................................................ 26

      2. The "All or Nothing Rule" ..................................................... 27

      3. CSSB Meetings ......................................................................... 28

   C. THE PROXIMITY OF CSSB AND ITS MANUFACTURER MEMBERS .......................................................... 29

   D. THE DEFENDANTS AND THEIR CO-CONSPIRATORS ENTERED INTO A CONSPIRACY TO FIX THE PRICES OF CEDAR SHAKES & SHINGLES IN THE UNITED STATES .......................................... 30

   E. THE DEFENDANTS AND THEIR CO-CONSPIRATORS AGREED TO JOINTLY BOYCOTT PRICE DISCOUNTERS ................................................................ 32

   F. THE GROUP BOYCOTT STRENGTHENED THE CONSPIRACY .................................................. 33

   G. THE ALLEGED CONSPIRACY WAS ECONOMICALLY PLAUSIBLE AND NORMAL MARKET FORCES CANNOT EXPLAIN THE PRICING FOR CERTI-LABEL™ CSS ..................................... 35

   H. THE CSS MARKET IS CONDUCIVE TO COLLUSION ................................................ 41

VI.    CLASS ACTION ALLEGATIONS ..................................................... 43

VII.   ANTITRUST INJURY ....................................................................... 45

VIII.  FRAUDULENT CONCEALMENT & TOLLING ............................ 46

IX.    CLAIM FOR RELIEF ........................................................................ 47

   SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1): UNLAWFUL CONSPIRACY IN UNREASONABLE RESTRAINT OF TRADE ...................................................... 47

X.     PRAYER FOR RELIEF ..................................................................... 48

XI.    JURY DEMAND ................................................................................. 48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## TABLE OF FIGURES

FIGURE 1: BRITISH COLUMBIA EXPORTS OF CSS ........................................................................ 20

FIGURE 2: CEDAR SHAKES & CEDAR SHINGLES.................................................................... 21

FIGURE 3: CSSB'S CERTI-LABEL™............................................................................................ 24

FIGURE 4: CSSB "FRAUD ALERT" ........................................................................................... 25

FIGURE 5: CSS MANUFACTURERS ON CSSB BOARD OF DIRECTORS (2012-2019) ...................... 26

FIGURE 6: LOCATIONS OF CSSB AND MANUFACTURER DEFENDANTS....................................... 29

FIGURE 7: LOCATIONS OF CSSB, MANUFACTURER DEFENDANTS,
AND NON-DEFENDANT CO-CONSPIRATORS ............................................................. 30

FIGURE 8: S&W INVOICE #00400105 ...................................................................................... 34

FIGURE 9: S&W INVOICE #0049063 AND INVOICE #00400218 ............................................... 34

FIGURE 10: PRICING OF #1 WESTERN RED CEDAR SHAKES & SHINGLES ..................................... 35

FIGURE 11: PRICING OF #2 WESTERN RED CEDAR SHAKES & SHINGLES ..................................... 36

FIGURE 12: BRITISH COLUMBIA WRC HARVEST VERSUS WRC-CSS PRICING ........................... 37

FIGURE 13: PRODUCER PRICE INDICES FOR SOFTWOOD LUMBER AND SAWMILL
SHAKE & SHINGLE PRODUCTS; PRICE INDEX OF CANADIAN SOFTWOOD EXPORTS;
AND INDEX OF BRITISH COLUMBIA WRC HARVEST ............................................... 38

FIGURE 14: AVERAGE PRICE INDICES OF SUPPLY INPUTS AND OF CSS ......................................... 39

FIGURE 15: INVENTORY VALUE AND MANUFACTURING FOR CANADIAN
SHINGLE & SHAKE MILLS ..................................................................................... 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT - ii

I.      **NATURE OF THE ACTION**

1.      Plaintiff alleges as follows based upon personal knowledge as to the facts pertaining to itself, and upon information and belief and the investigation of counsel as to all other matters.

2.      This class action lawsuit involves an antitrust conspiracy to fix the prices of cedar shakes and shingles ("CSS") between and among Defendant Cedar Shake and Shingle Bureau ("CSSB" or "Bureau")—the industry's only trade association—and its manufacturer members, including Defendant Anbrook Industries Ltd. ("Anbrook"), Defendant Waldun Forest Products Ltd. ("Waldun"), and Defendant G&R Cedar Ltd. ("G&R") (collectively, "Manufacturer Defendants").

3.      Plaintiff, Lloyd Evan Bradow ("Plaintiff" or "Bradow"), brings this action on behalf of himself and on behalf of a Class consisting of all individuals and entities in the United States that directly purchased Certi-Label™ CSS from the Manufacturer Defendants or their co-conspirators from at least as early as January 1, 2011 through the present (the "Class Period," more fully defined *infra*).[1]

4.      Cedar shakes are split by hand, have a relatively rough appearance, and are almost always used in roofing applications, whereas cedar shingles are machine-sawn, have a consistent appearance and thickness, and are used in both siding and roofing applications. CSS are made from Western Red Cedar or Alaskan Yellow Cedar, and these species are only commercially harvested in the Pacific Northwest, especially British Columbia and the State of Washington.

5.      CSS is overwhelmingly manufactured in the Pacific Northwest for sale in the United States. The United States is the largest market for CSS in the world, and more than 90% of the CSS exported from Canada is imported into the United States. Between 2011 and 2018, Canadian manufacturers, including the Manufacturer Defendants and their co-conspirators, exported more than $1 billion of CSS to the United States, or more than $139 million of CSS per year.

---

[1]      Additional discovery may reveal that the conduct alleged in this Complaint commenced prior to the start of the Class Period, and Plaintiff reserves all rights to amend his complaint as appropriate.

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

6.      The CSS sold by the Manufacturer Defendants and their co-conspirators all carry the "Certi-Label™" designation and include Certi-Grade™ shingles, Certi-Sawn™ shakes, and Certi-Split™ shakes. These products are collectively referred to herein as "Certi-Label™ CSS".

7.      The CSSB controls the Certi-Label™, Certi-Grade™, Certi-Sawn™, and Certi-Split™ trademarks and limits their use to CSSB members. Certi-Label™ CSS account for 95% of the CSS products sold in the United States and sell at a price of at least 15-20% more than CSS without the Certi-Label™.

8.      Because the raw material costs for CSS are set based on competitive auctions, this price premium restricts the ability of non-CSSB manufacturers to obtain raw materials on commercially viable terms.

9.      Defendants conspired to fix, increase, maintain, or stabilize the price of Certi-Label™ CSS and reduce or eliminate price competition among CSS manufacturers in violation of the Sherman Act. Defendants' conspiracy began at least as early as January 1, 2011 and continues through the present.

10.     Throughout the Class Period, the Defendants and their co-conspirators routinely discussed and agreed on the pricing levels to charge for Certi-Label™ CSS, and when confronted with CSSB members that were not adhering to their price-fixing arrangement, agreed to take action to terminate those price discounters from the CSSB, thereby eliminating their ability to utilize the Certi-Label™ designation on their CSS product. For example, in late 2018, Waldun's Director, Curtis Walker ("Walker") met with Kris Watkins, Chief Operating Officer of co-conspirator Watkins Sawmills Ltd. ("Watkins"), and stated that Waldun "never dropped their pricing," and that all CSSB manufacturers should keep their prices at consistent levels. When told that another CSSB manufacturer, S&W Forest Products Ltd. ("S&W"), was discounting Certi-Label™ CSS during times of low demand, Waldun's Walker exclaimed: "Yeah, well we just need to get rid of that guy." Thereafter, Defendants successfully took coordinated action, citing pretextual justifications, to terminate S&W's CSSB membership, which threatened S&W's ability to continue its operations. The foregoing example is merely illustrative: Defendants' price-fixing,

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

enforced through collective boycotting of price discounters, has been ongoing for nearly a decade, if not longer.

11.     The conspiracy was facilitated and enforced by the CSSB, which provides ample opportunities for its members to conspire. In addition, the Manufacturer Defendants have worked to consolidate their power in the CSSB—partly through the elimination of would-be discounters—so that the CSSB now serves as little more than a vehicle through which the price-fixing conspiracy is implemented and policed, as demonstrated by the pretextual termination of S&W from the CSSB for pricing Certi-Label™ CSS below the agreed-upon prices. The collusive mission of the CSSB was confirmed by another excluded competitor, who called the organization the "Mafia."

12.     The CSSB, under the control of the Manufacturer Defendants, has also enacted policies aimed at further eliminating competition among and between the CSSB member manufacturers. For example, the CSSB by-laws contain an "All or Nothing" rule, which requires all CSSB members to *only* produce and sell Certi-Label™ CSS. This rule was intended to eliminate, and has the actual impact of eliminating, price competition among CSSB manufacturers. The "All or Nothing" rule therefore helps to ensure that Certi-Label™ CSS continue to be sold at higher, supra-competitive prices. This rule has no competitive purpose.

13.     Due to the Manufacturer Defendants' success in consolidating their power in the CSSB and eliminating price discounters from the trade association (and thereby also eliminating their ability so secure the necessary raw materials), the other manufacturer members of the CSSB, which would normally compete with the Manufacturer Defendants on the basis of price, agreed to join the price-fixing conspiracy. These non-party conspiring manufacturers joined the conspiracy because they feared they would face the same fate as other CSSB price discounters before them: expulsion from the Bureau and the significant loss of revenue that would entail, due to concerted retaliation by the Defendants.

14.     Apart from this traditional conspiracy evidence, the structure and pricing behavior of the CSS market support the conclusion that the Defendants entered into an anticompetitive scheme in violation of the Sherman Act. With respect to structure, the industry is highly

CLASS ACTION COMPLAINT - 3

concentrated and vertically integrated, with high barriers to entry; CSS is a commodity without a good substitute, and the demand for it is price-inelastic; and there are ample opportunities to conspire. With respect to pricing behavior, the prices of CSS sold in the United States have increased substantially, in amounts that cannot be explained by normal market forces such as raw material costs or supply and demand, since January 1, 2011.

15.    Defendants' anticompetitive actions had the intended purpose and effect of artificially fixing, inflating, maintaining, or stabilizing the price of Certi-Label™ CSS sold to Plaintiff and other members of the Class. Plaintiff and other members of the Class paid these supra-competitive prices, and accordingly, suffered an antitrust injury as a result of the Defendants' conduct.

## II.    JURISDICTION AND VENUE

16.    This action arises under Section 1 of the Sherman Act (15 U.S.C. § 1), and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26).

17.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26). This Court also has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million, exclusive of costs and interest, and is a class action in which at least one Defendant is a citizen or subject of a foreign state.

18.    Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act (15 U.S.C. §§ 15, 22, and 26) and 28 U.S.C. § 1391(b), (c), and (d). One or more of the Defendants resided, transacted business, were found, or had agents in this District, a substantial part of the events giving rise to Plaintiffs' claims arose in the District, and a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

19.    This Court has personal jurisdiction over each Defendant because each: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, or delivered substantial quantities of CSS throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; and/or (d)

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons or entities residing in, located in, or doing business in the United States, including in this District.

20.    The Defendants and their co-conspirators' activities, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the United States.

21.    No other forum would be more convenient for the parties and witnesses to litigate this case.

## III.    THE PARTIES

### A.    Plaintiff

22.    Plaintiff is a Washington resident doing business as Peninsula Contracting and Roofing, with his principal place of business in Port Angeles, Washington. Plaintiff purchased Certi-Label™ CSS directly from one or more of the co-conspirators identified above during the Class Period.

### B.    Defendants

23.    Defendant CSSB is a Washington non-profit corporation that is the only trade association serving the CSS industry in the United States and Canada. The CSSB is headquartered in Mission, British Columbia and maintains an office in Sumas, Washington. The brother of Waldun's Walker, Clay Walker, is CSSB's "Cedar Quality Auditor" and CSSB's "District Manager" for the Pacific Northwest region.

24.    Defendant Anbrook is a British Columbia corporation with its primary place of business in Pitt Meadows, British Columbia. Anbrook is one of the largest CSS manufacturers in the world. Anbrook is a member of the CSBB, and its President, Brooke Meeker ("Meeker"), sits on CSSB's Board of Directors and acts as its Chairwoman. Anbrook owns and operates a CSS manufacturing facility in Pitt Meadows, British Columbia and manufacturers Certi-Label™ CSS. During the Class Period, Anbrook and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the United States.

25.     Defendant Waldun is a British Columbia corporation with its principal place of business in Maple Ridge, British Columbia. Waldun bills itself as "the largest company in the world manufacturing such a selection of cedar products." It is a member of the CSSB, and its Director, Walker, sits on CSSB's Board of Directors and acts as its Secretary/Treasurer. Waldun owns and operates a CSS manufacturing facility in Maple Ridge, British Columbia and manufactures Certi-Label™ CSS. During the Class Period, Waldun and/or its predecessors, agents, wholly owned or controlled subsidies, or affiliates sold Certi-Label™ CSS in interstate commerce to purchasers in the United States.

26.     Defendant G&R is a British Columbia corporation headquartered in Matsqui, British Columbia. G&R is a self-described industry leader in the CSS industry. It is a member of the CSSB, and its Sales Manager, Stuart Dziedzic ("Dziedzic"), sits on CSSB's Board of Directors. G&R owns and operates a CSS manufacturing facility in Matsqui, British Columbia and manufactures Certi-Label™ CSS. During the Class Period, G&R and/or its predecessors, agents, wholly owned or controlled subsidies, or affiliates sold Certi-Label™ CSS in interstate commerce to purchasers in the United States.

27.     "Defendant" or "Defendants" as used herein includes, in addition to those named above, each of the named Manufacturer Defendants' predecessors, including CSS companies that merged with or were acquired by the Manufacturer Defendants and each Manufacturer Defendant's agents or wholly owned or controlled subsidiaries that sold Certi-Label™ CSS in interstate commerce, to purchasers in the United States during the Class Period.

28.     To the extent that subsidiaries and divisions within each Manufacturer Defendant's corporate family sold or distributed Certi-Label™ CSS, these subsidiaries played a material role in the conspiracy alleged in this Complaint because Defendants wished to ensure that the prices paid for such CSS would not undercut the artificially raised and inflated pricing that was the purpose of Defendants' coordinated and collusive behavior as alleged herein. Thus, all such entities within the corporate family were active, knowing participants in the conspiracy alleged

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

herein, and their conduct in selling, pricing, distributing and collecting monies from Plaintiff and the members of the Class for Certi-Label™ CSS was known to and approved by their respective corporate parent named as a Defendant in this Complaint.

29.     Each of the Defendants named herein acted as the agent or joint-venturer of or for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

30.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

31.     Whenever reference is made to any act of any corporation, the allegation means that the corporation engaged in the act by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

**C.     Non-Defendant Co-Conspirators**

32.     Various other persons, firms, and corporations not currently named as defendants have participated as co-conspirators as Defendants and have performed acts and made statements in furtherance of the conspiracy (collectively, the "Non-Defendant Co-Conspirators"). Defendants are jointly and severally liable for the acts of the Non-Defendant Co-Conspirators whether or not named as defendants in this Complaint. A list of the known Non-Defendant Co-Conspirators follows.

33.     #208 Shake & Shingle/Griffiths Inc. ("#208") is a Washington corporation headquartered in Moclips, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, #208 and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

34.     A & R Cedar, Inc. ("A&R") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB, and a member of its senior management team, Cecilia Acuna ("Acuna"), sits on the CSSB Board of Directors. A&R manufactures CSS. During

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

the Class Period, A&R and/or its predecessors, agents, wholly owned or controlled subsides, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

35.    A.B. Cedar Shingle ("A.B. Cedar") is a British Columbia corporation headquartered in Sicamous, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, ACS and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

36.    A.C.S. Cedar, Inc. ("A.C.S.") is a Washington corporation headquartered in Aberdeen, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, ACS and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

37.    Acuna Cedar Products, Inc. ("Acuna Cedar") is a Washington corporation headquartered in Sedro-Woolley, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Acuna Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

38.    Alfa Red Cedar Products, Inc. ("Alfa Red") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Alfa Red and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

39.    American Cedar Sales, LLC ("American Cedar") is an Idaho corporation headquartered in Kamiah, Idaho. It is a member of the CSSB and manufactures CSS. During the Class Period, American Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

40.     Anderson Shake and Shingle Mill, Inc. ("Anderson") is a Washington corporation headquartered in Cathlamet, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Anderson and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

41.     Best Shingle Sales, Inc. ("Best") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB, and its owner, Terry Kost ("Kost"), sits on CSSB's Board of Directors. Best manufactures CSS. During the Class Period, Best and/or its predecessors, agents, wholly owned or controlled subsidies, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

42.     Campbell River Shake & Shingle Co. Ltd. ("Campbell River") is a British Columbia corporation headquartered in Campbell River, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Campbell River and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

43.     Cape Scott Cedar Products Ltd. ("Cape Scott") is a British Columbia corporation headquartered in Port Hardy, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Cape Scott and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

44.     Clearbrook Shake & Shingle Ltd. ("Clearbrook") is a British Columbia corporation headquartered in Abbotsford, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Clearbrook and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

45.     Comox Valley Shakes (2019) Ltd. ("Comox") is a British Columbia corporation headquartered in Campbell River, British Columbia. It is a member of the CSSB and manufactures

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

CSS. During the Class Period, Comox and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

46.     Confederate Shake & Shingle Ltd. ("Confederate") is a British Columbia corporation headquartered in Duncan, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Confederate and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

47.     DLM Shake Co. ("DLM") is an Idaho business based in Saint Maries, Idaho. It is a member of the CSSB and manufactures CSS. During the Class Period, DLM and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

48.     Fabian Shingles LLC ("Fabian") is a Washington corporation headquartered in Amanda Park, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Fabian and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

49.     Goat Lake Forest Products (1985) Ltd. ("Goat Lake") is a British Columbia corporation headquartered in Powell River, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Goat Lake and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

50.     Golden Ears Shingle Ltd. ("Golden Ears") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Golden Ears and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

51.     Imperial Cedar Products Ltd. ("Imperial Cedar") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, ACS and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

52.     J.C. Shingles, Inc. ("J.C. Shingles") is a Washington corporation headquartered in Amanda Park, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, J.C. Shingles and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

53.     J.E.C. Cedar, Inc. ("J.E.C.") is a Washington corporation headquartered Amanda Park, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, J.E.C. and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

54.     L & H Shake, Inc. ("L&H") is a Washington corporation headquartered Hoquiam, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, L&H and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

55.     Long Cedar Inc. ("Long Cedar") is a Washington corporation headquartered in Forks, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Long Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

56.     Pacific Cedar ("Pacific Cedar") is a Canadian business based in Port Alberni, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Pacific Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

57.     Pacific Chalet Ltd. ("Pacific Chalet") is a British Columbia corporation

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

headquartered in Powell River, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Pacific Chalet and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

58.     Pacific Coast Cedar Products, Ltd. ("Pacific Coast") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, ACS and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

59.     Pacific Shingle Inc. ("Pacific Shingle") is a Washington corporation headquartered in Forks, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Pacific Shingle and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

60.     Pleasant Lake Cedar ("Pleasant Lake") is a Washington business based in Beaver, Washington. It is a member of the CSSB and manufactures CSS. During the Class Period, Pleasant Lake and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

61.     Port McNeill Shake & Shingle (2007) Ltd. ("Port McNeill") is a Canadian corporation headquartered in Port McNeill, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Port McNeill and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

62.     Premium Cedar Products Ltd. ("Premium Cedar") is a British Columbia corporation headquartered in Mission, British Columbia. It is a member of the CSSB, and one of its senior managers, Ed Watkins, sits on CSSB's Board of Directors and served as its Past Chairman. Premium manufactures CSS. During the Class Period, Premium and/or its predecessors,

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  agents, wholly owned or controlled subsidies, or affiliates sold Certi-Label™ CSS in interstate

2  commerce, directly to purchasers in the United States.

3       63.    Premium Shingle LLC ("Premium Shingle") is a Washington corporation

4  headquartered in Beaver, Washington. It is a member of the CSSB and manufactures CSS. During

5  the Class Period, Premium Shingle and/or its predecessors, agents, wholly owned or controlled

6  subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in

7  the United States.

8       64.    Rainy Day Shake & Shingle, Inc. ("Rainy Day") is a Washington corporation

9  headquartered in Forks, Washington. It is a member of the CSSB and manufactures CSS. During

10  the Class Period, Rainy Day and/or its predecessors, agents, wholly owned or controlled

11  subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in

12  the United States.

13       65.    Riverside Shingle Products Ltd. ("Riverside") is a British Columbia corporation

14  headquartered in Errington, British Columbia. It is a member of the CSSB and manufactures CSS.

15  During the Class Period, Riverside and/or its predecessors, agents, wholly owned or controlled

16  subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in

17  the United States.

18       66.    Serpentine Cedar Ltd. ("Serpentine") is a British Columbia corporation

19  headquartered in Langley City, British Columbia. It is a member of the CSSB and manufactures

20  CSS. During the Class Period, Serpentine and/or its predecessors, agents, wholly owned or

21  controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to

22  purchasers in the United States.

23       67.    Silver-Coqu Cedar Products ("Silver-Coqu") is a Canadian business headquartered

24  in Hope, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class

25  Period, Silver Coqu and/or its predecessors, agents, wholly owned or controlled subsidiaries, or

26  affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United

27  States.

28

CLASS ACTION COMPLAINT - 13

68.     Star Cedar Sales, Inc. ("Star Cedar") is an Idaho corporation headquartered in Kamiah, Idaho. It is a member of the CSSB and manufactures CSS. During the Class Period, ACS and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

69.     Stave Lake Cedar Mills Inc. ("Stave") is a British Columbia corporation headquartered in Dewdney, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Stave and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

70.     Titan Cedar Products Ltd. ("Titan") is a British Columbia corporation headquartered in Port Coquitlam, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Titan and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

71.     Vancouver Island Shingle Ltd. ("Vancouver Shingle") is a British Columbia corporation headquartered in Mount Waddington, British Columbia. It is a member of the CSSB and manufactures CSS. During the Class Period, Vancouver Shingle and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

72.     Watkins is a British Columbia corporation headquartered in Mission, British Columbia. It has common ownership and management with Premium Cedar, and even uses the same main telephone number. It is a member of the CSSB, and its President, Ed Watkins, sits on CSSB's Board of Directors and served as its Past Chairman. Watkins manufactures CSS. During the Class Period, Watkins and/or its predecessors, agents, wholly owned or controlled subsidies, or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

73.     Zoffel Logging & Milling Inc. ("Zoffel") is a Washington corporation

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   headquartered in Forks, Washington. It is a member of the CSSB and manufactures CSS. During

2   the Class Period, Zoffel and/or its predecessors, agents, wholly owned or controlled subsidiaries,

3   or affiliates sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United

4   States.

5           **D.**    <u>**Other Non-Parties**</u>

6          74.    S&W is a British Columbia corporation headquartered in Maple Ridge, British

7   Columbia. During the Class Period, S&W and/or its predecessors, agents, wholly owned or

8   controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate

9   commerce, directly to purchasers in the United States. As described in greater detail herein, in

10  December 20, 2018, the CSSB Board of Directors terminated S&W's membership in the CSSB

11  because S&W was selling Certi-Label™ CSS at discounted prices, and after filing a complaint

12  (*S&W Forest Prods., Ltd. v. CSSB, et al*., No. 2:19-cv-000202 (W.D. Wash.)) (the "S&W

13  Lawsuit")—which included allegations of anticompetitive conduct by the Defendants in this

14  action—and successfully moving for a preliminary injunction in this District, was re-admitted to

15  the CSSB in April 2019.

16          **E.**    <u>**Former CSSB Members**</u>

17         75.    Various other persons, firms, and corporations manufactured Certi-Label™ CSS as

18  members of the CSSB during the Class Period (collectively, the "Former CSSB Members"). A list

19  of the known Former CSSB Members follows. As explained herein, a yet unknown number of

20  these Former CSSB Members—as with S&W—were expelled from the Bureau for discounting

21  Certi-Label™ CSS.

22         76.    A.K. Cedar Products Ltd. ("A.K. Cedar") is a British Columbia corporation

23  headquartered in Abbotsford, British Columbia. It was a member of the CSSB in or around 2016.

24  During the Class Period, A.K. Cedar and/or its predecessors, agents, wholly owned or controlled

25  subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce,

26  directly to purchasers in the United States.

27         77.    B&B Cedar Sales, Inc. ("B&B") is a Washington corporation headquartered in

28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Lacey, Washington. It was a member of the CSSB in or around 2012. During the Class Period, B&B and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

78.    B.C.F. Shake Mill Ltd. ("B.C.F.") is a British Columbia corporation headquartered in Fanny Bay, British Columbia. It was a member of the CSSB during the Class Period. During the Class Period, B.C.F. and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

79.    Cedar Valley Holdings Ltd. ("Cedar Valley") was a British Columbia corporation headquartered in Valemont, British Columbia. It was a member of the CSSB in or around 2016. During the Class Period, Cedar Valley and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

80.    Crawford Shake & Shingle, Ltd. ("Crawford") was a British Columbia corporation headquartered in Port Alberni, British Columbia. It was a member of the CSSB in or around 2013. During the Class Period, Crawford and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

81.    D & G Shake Co., Inc. ("D&G") was a Washington corporation headquartered in Amanda Park, Washington. It was a member of the CSSB in or around 2016. During the Class Period, D&G and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

82.    Francisco Cisneros Shingles ("Francisco Shingles") was a Washington business based in the Forks, Washington area. It was a member of the CSSB in or around 2016. During the Class Period, Francisco Shingles and/or its predecessors, agents, wholly owned or controlled

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

83.    Hoko Falls Cedar is a Washington business based in Sekiu, Washington. It was a member of the CSSB in or around 2012. During the Class Period, Hoko Falls Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

84.    Lamming Cedar Mills BC ("Lamming Cedar") is a British Columbia business based in McBride, British Columbia. It was a member of the CSSB in or around 2012. During the Class Period, Lamming Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

85.    Medley Co. Cedar, Inc. ("Medley") is an Idaho corporation headquartered in Pierce, Idaho. It was a member of the CSSB in or around 2012. During the Class Period, Medley and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

86.    ML Cedar Products Inc. ("ML Cedar") was a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2013, 2016, and 2017. During the Class Period, ML Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

87.    Olympic Cedar Products, Inc. ("Olympic") is a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2016 and 2017. During the Class Period, Olympic and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

88.    Pacific NW Products LLC ("Pacific NW") is a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2017. During the

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

Class Period, Pacific NW and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, to purchasers in the United States.

89.    Real Wood, Inc. ("Real Wood") was a Washington corporation headquartered in Sequim, Washington. It was a member of the CSSB in or around 2012 and 2015. During the Class Period, Real Wood and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

90.    S&K Cedar Products Ltd. ("S&K") is a British Columbia corporation headquartered in Mission, British Columbia. It was a member of the CSSB in or around 2012 to 2017. During the Class Period, S&K and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

91.    Sherico Cedar Products ("Sherico") is a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2012 and 2013. During the Class Period, Sherico and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

92.    Stave River Industries Ltd. ("Stave River") was a British Columbia corporation headquartered in Maple Ridge, British Columbia It was a member of the CSSB in or around 2012 and 2015. During the Class Period, Stave River and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

93.    Twin River Lumber is a British Columbia business based in Malakwa, British Columbia. It was a member of the CSSB in or around 2013, 2016, and 2017. During the Class Period, Twin River Lumber and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce,

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

directly to purchasers in the United States.

94.    Western Gold Cedar Products ("Western Gold") is an Alaskan business based in Thorne Bay, Alaska. It was a member of the CSSB in or around 2016. During the Class Period, Western Gold and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

95.    Wilson Shake Mill was a Washington business based in Chehalis, Washington. It was a member of the CSSB in or around 2012. During the Class Period, Wilson Shake Mill and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label™ CSS in interstate commerce, directly to purchasers in the United States.

## IV.    IMPACT ON UNITED STATES TRADE & COMMERCE

96.    The United States is the largest market for CSS in the world, valued at hundreds of millions of dollars annually, and during the Class Period, the Manufacturer Defendants and their co-conspirators collectively possessed a sizeable majority share of the market for CSS in the United States.

97.    Most CSS is manufactured in British Columbia—mostly by the Manufacturer Defendants—and then imported into the United States. According to official Canadian export data, between 2011 and 2018, roughly $1.1 billion worth of CSS was imported into the United States from British Columbia (nearly 10% of these imports were into Washington), or more than $139 million, on average, worth of CSS per year. This equates to nearly 91% of all CSS manufactured in British Columbia being imported into the United States between 2011 and 2018.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

98.   The following chart shows the dollar value (in U.S. Dollars) of British Columbia CSS exports to the United States, as well as the percentage of all CSS exported from British Columbia to the United States:



*Figure 1: British Columbia Exports of CSS*

99.   All CSSB manufacturers (the Manufacturer Defendants and the Non-Defendant Co-Conspirators) participate in and sell the vast majority of their CSS in the United States, and due to the "All or Nothing" Rule, all of the CSS sold by CSSB manufacturers in the United States was Certi-Label™ CSS.

100.   Thus, during the Class Period, Defendants engaged in conduct both inside and outside the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

101.   In addition, each Manufacturer Defendant, directly or through its subsidiaries or other affiliates, sold Certi-Label™ CSS in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this District, during the Class Period.

102.   Defendants' business activities substantially affected interstate trade and commerce

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

in the United States and caused antitrust injury in the United States.

## V.    FACTUAL ALLEGATIONS

103.    The facts in support of this action are based on Plaintiffs' review of publicly-available information. Based on a review of these documents, and as described in greater detail herein, Plaintiffs believe that discovery will result in the production of many more inculpatory documents within Defendants' sole possession, custody, or control.

### A.    The Relevant Products

104.    Cedar shakes are used for roofing shingles and have been hand split for a rustic look, whereas cedar shingles are used for both sidewalls and roofing and have been uniformly sawn for a consistent, uniform machine-like look. According to G&R's website, "[t]he main difference between a shingle and a shake is that a shingle is sawn on both sides for a smooth, tailored appearance, while a shake is split on the face, and sawn on the back, for a rougher, rustic look."

105.    The following illustrations visually depict the differences between cedar shakes and cedar shingles:

*Figure 2: Cedar Shakes & Cedar Shingles*



106.    CSS are produced from logs and cut blocks of Western Red Cedar (*Thuja plicata*) or Alaskan Yellow Cedar (*Cupressus nootkatensis*). Western Red Cedar and Alaskan Yellow Cedar are only commercially available in the Pacific Northwest, and British Columbia has the world's largest supply of standing Western Red Cedar.

107.    Both Western Red Cedar and Alaskan Yellow Cedar are durable, naturally water-

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

resistant, and highly resistant to decay, and both species are used for a variety of building applications outside of CSS (*e.g.*, decking, fencing, and landscaping). While CSS is the second most valuable product (by total dollar value) made for Western Red Cedar and Alaskan Yellow Cedar, the market for lumber made from Western Red Cedar and Alaskan Yellow Cedar is roughly four times as valuable as the market for CSS.

108.    The United States is the largest market for CSS in the world. As noted above, the United States was the destination for roughly 91% of all CSS produced in British Columbia during the Class Period.

109.    CSS are considerably more expensive than traditional roofing and siding materials (*e.g.*, asphalt shingles and vinyl siding) because they are widely considered to be more visually pleasing as well as more durable than traditional products. While roofing and siding generally constitute 10% of the cost of a home, CSS constitute a proportionally higher percentage due to the price premium they command over traditional products. For instance, a cedar shingle roof of between 1,400-2,100 square feet would cost approximately $12,800-$19,700, depending on various factors, and a cedar shake roof of the same size would cost approximately $15,200-$24,000, depending on various factors.

110.    Certi-Label™ CSS constitute an economically distinct product in the United States and account for roughly 95% of the CSS purchased in the United States.

111.    The Certi-Label™ denotes that the CSS complies with the CSSB-97 grading rules. The CSSB-97 grading rules govern the production and packing of CSS made from Western Red Cedar and Alaskan Yellow Cedar, and the CSSB holds the copyright to the CSSB-97 grading rules.

112.    The CSSB has aggressively and successfully promoted its CSSB-97 grading rules and its trademarked Certi-Label™ CSS. As a result, notwithstanding the fact that "non-bureau" mills can market their CSS product as complying with the CSSB-97 grading rules, the Certi-Label™ label is perceived as guaranteeing a certain quality of product. This is further evidenced by the fact that the CSSB-97 grading rules have been widely incorporated into building codes throughout the United States and Canada, as well as the fact that many architects and builders

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

require Certi-Label™ CSS in their building specifications. In fact, Certi-Label™ CSS has near 100% market share in the northeastern United States, Pacific Northwest, Mountain West, and Midwest.

113.    A CSS manufacturer must be a member of the CSSB in order to use the Certi-Label™ trademark and affiliated copyrights. As the CSSB explains in its *Certi-Label™ Cedar Shake and Shingle Product Catalog*: "Cedar shakes and shingles manufactured by members of the [CSSB] are the only products labeled with the 'Certi' brand name."

114.    Because the Certi-Label™ label is limited to CSSB members, manufacturers of CSS that are not members of the CSSB only have access to a small fraction of the CSS market. Without membership in the CSSB, a manufacturer of CSS is unable to effectively compete in the United States market for CSS, and as a result, during the last 20 years, virtually all Canadian and US-based manufacturers of CSS have been members of the CSSB.

115.    Certi-Label™ CSS fall into three main categories: Certi-Split® shakes, Certigrade® shingles, and Certisawn® shakes. Each of these three main product types are described in greater detail below:

       a.    Certi-Split® Shakes: These shakes have a split face exposed with a naturally rustic appearance and are sawn the back. The most common lengths for this shake are 18" and 24", and the butt thickness ranges from 3/8" to 2" plus.

       b.    Certisawn® Shakes: These shakes are sawn on both sides for a semi-textured look with a stronger shadow-line than a shingle. The most common lengths for this shake are 18" and 24", and the butt thickness ranges from 5/8" to 1.5".

       c.    Certigrade® Shingles: These shingles are sawn on both sides for a tailored appearance and are available in 16", 18". or 24" lengths. The butt thickness is gauged using a stack of shingles.

116.    In order to distinguish products of different qualities, each product category is subject to Bureau requirements setting forth how the product will "grade," taking into consideration numerous factors such as how clear the wood is, the thickness of the product, and

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the grain of the wood. For instance, Certigrade® shingles are broken down into Number 1 Grade, Number 2 Grade, Number 3 Grade, and Undercoursing Grade products.

117.    Each product type and grade have a distinct Certi-Label™ that conveys certain pieces of information to buyers. The below graphic, from the CSSB, shows the Certi-Split® label and what its various components indicate:

### Figure 3: CSSB's Certi-Label™



118.    The CSSB ensures that Certi-Label™ maintains its dominant position in the CSS market by, in part, issuing warnings against using competing products that amplify the alleged

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

differences between Certi-Label™ CSS and CSS manufactured by "non-bureau" mills.

119.    An example of one such "Fraud Alert" is shown below. In relevant part, this "Fraud Alert" warns buyers: "**PITCH: 'These products are just as good as Certi-label™ brand products, but they are cheaper/more readily available/what your roofing contractor prefers to work with.'** Don't believe these types of misleading statements. You get what you pay for."

*Figure 4: CSSB "Fraud Alert"*





B.    **The CSSB Structure, Bylaws, and Meetings**

120.    The CSSB traces its origin to a June 1915 meeting of the Trustees of the West Coast Lumber Manufacturers Association, at which "it was agreed to establish a branch of the association to serve those members who manufactured shingles." This organization merged with the Handsplit Shake Bureau in 1963 to become the Red Cedar Shingle & Handsplit Bureau, and in 1988, the organization's name was officially changed to the Cedar Shake & Shingle Bureau.

121.    Throughout the Class Period, the CSSB has been the sole trade association for CSS

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

manufacturers and the preeminent regulator of the CSS industry in the United States and Canada.

122.    The CSSB grants its member manufacturers weighted votes based on each manufacturer's annual CSS production, and the Manufacturer Defendants—among the largest manufacturers of CSS in the world—have a combined voting power of more than 50%. This gives the Manufacturer Defendants significant power within the CSSB, including the ability to ensure members that discount below the agreed upon price levels are expelled from the CSSB.

### 1.    The CSSB Board of Directors

123.    The Manufacturer Defendants have sat on CSSB's board since at least 2012. During this same period, representation by other CSS manufacturers has trended downward, as shown in the below chart:

*Figure 5: CSS Manufacturers on CSSB Board of Directors (2012-2019)*

|  | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|
| Anbrook | X | X | X | X | X | X | X | X |
| G&R | X | X | X | X | X | X | X | X |
| Waldun | X | X | X | X | X | X | X | X |
| A&R Cedar |  |  |  |  |  |  |  | X |
| Anderson | X | X | X | X | X | X | X |  |
| Best | X | X | X |  |  | X | X | X |
| Premium Cedar | X | X | X | X | X | X | X | X |
| S&K |  | X | X | X | X |  |  |  |
| Serpentine | X | X | X |  |  |  |  |  |
| # of Manufacturer Members | 7 | 8 | 8 | 6 | 6 | 6 | 6 | 6 |

124.    The Manufacturer Defendants' employees have also served in leadership capacities on the CSSB Board of Directors throughout the Class Period. For example, Anbrook's Meeker has served as the CSSB Board of Director's Chairwoman and Vice Chairwoman and Waldun's Walker has served as the Secretary/Treasurer on the CSSB Board of Directors.

125.    In addition, the brother of Waldun's Walker, Clay Walker, is CSSB's "Cedar

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

Quality Auditor" and CSSB's "District Manager" for the Pacific Northwest region.

126.    Throughout the Class Period, the Manufacturer Defendants have utilized their weighted voting power to defeat proposals by smaller CSSB manufacturers, including proposals to eliminate weighted voting on non-manufacturing members and to impose term limits on directors.

127.    Throughout the Class Period, the Manufacturer Defendants have utilized their weighted voting power to consolidate their power over the CSSB by, among other things, adopting bylaw changes that reduced the number of seats on the Board of Directors, reducing membership meeting quorum requirements (from 40% to 30% of the membership), and ensuring the Board chairperson was not constrained by the historic practice of only voting in the event of a tie but instead was afforded full voting rights like other members of the Board of Directors.

### 2.    The "All or Nothing Rule"

128.    Throughout the Class Period, the CSSB by-laws have prevented its manufacturer members from producing non-Certi-Label™ CSS. As mentioned earlier, this is known inside the CSSB as the "All or Nothing Rule."

129.    Specifically, Article III § 2 of the CSSB by-laws provides, in relevant part, that "[t]o become a Mill-Member, a person or entity must: (a) manufacture or process only Products that comply with CSSB's Product quality, inspection, grading and labeling policies, procedures, rules, regulations and standards."

130.    The "All or Nothing Rule" was strengthened by the CSSB Board in November 2018—on the motion and second of Waldun's Walker and Anbrook's Meeker—to "ensure that all enterprises owned, operated, or controlled by a Member that are involved in the manufacture, distribution, or sale of [CSS] apply for and become CSSB Members," such that they could only manufacture, distribute, and sell Certi-Label™ product.

131.    Under the terms of the "All or Nothing Rule," a manufacturer would be expelled from the CSSB if it manufactured and sold *any* CSS that did not carry the Certi-Label™. Because the price of Certi-Label™ CSS was fixed pursuant to an anticompetitive agreement, this rule

CLASS ACTION COMPLAINT - 27

1    prevented CSSB members from undercutting the conspiracy by selling non-Certi-Label™ product

2    at lower prices. The "All or Nothing Rule" therefore had the purpose and effect of preventing price

3    competition between CSSB manufacturers.

4              ***3.     CSSB Meetings***

5        132.    The CSSB holds its Annual General Meeting, which includes a meeting of the

6    Board of Directors, every Fall.

7        133.    The Annual General Meetings during the Class Period were held on the following

8    dates at the following locations:[2]

9              a.    2013: October 23, 2013 in Las Vegas, Nevada;

10             b.    2015: September 10-12, 2015 in Whistler, British Columbia;

11             c.    2016: August 26-27, 2016 in Vancouver, British Columbia; and

12             d.    2017: September 15, 2017 in Abbotsford, British Columbia.

13       134.    In its newsletter, *Certi-Scene™*, CSSB touts benefits of attending the Annual

14   General Meeting as including the following: (a) "information sharing and business education"; (b)

15   "see[ing] what their association is doing to promote and protect the Certi-label™ brand"; (c) "high

16   levels of member engagement and excellent conversation about protecting and promoting the

17   Certi-label™ brand"; and (d) "enjoy[ing] excellent networking with colleagues."

18       135.    In addition to its annual meeting, the CSSB Board of Directors also holds regular

19   conference calls and in-person meetings throughout the year. For example, on February 17, 2016

20   the CSSB Board of Directors held a conference call that included a confidential portion to which

21   non-members were not invited, and on May 27, 2016 the CSSB Board of Directors met in Ocean

22   Shores, Washington.

23       136.    CSSB members also attend *ad hoc* events on a regular basis. For instance, on

24   December 17, 2015, the CSSB hosted a Lifetime Achievement Awards luncheon in Bellingham,

25

26

27   [2] Plaintiff is not yet aware of the dates and locations of the Annual General Meetings held in 2011, 2012, 2014, and 2018.

28

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Washington that was attended by the Manufacturer Defendants and other CSSB manufacturers.

2        137.    These meetings provided the Defendants and the Non-Defendant Co-Conspirators

3    numerous opportunities to conspire on the pricing of Certi-Label™ CSS and the punishment of

4    price discounters within the CSSB.

5        **C.    The Proximity of CSSB and Its Manufacturer Members**

6        138.    The Manufacturer Defendants are all located in the greater Vancouver, British

7    Columbia metropolitan area. Anbrook is headquartered in Pitt Meadows, British Columbia, while

8    Waldun is headquartered in the neighboring city, Maple Ridge, British Columbia, under 14 miles

9    east of Anbrook. G&R Cedar is based in Chilliwack, which is under 20 miles east of Waldun.

10   Defendant CSSB is located in Mission, British Columbia—under 7 miles east of Waldun and under

11   14 miles west of G&R Cedar.

12       139.    The below figure shows the locations of CSSB and the Manufacturer Defendants:

13                    ***Figure 6: Locations of CSSB and Manufacturer Defendants***



24       140.    The co-conspirator manufacturers are also located close to each other and to

25   Defendants. Premium Cedar and Watkins are both located in Maple Ridge, British Columbia, the

26   same city where Waldun is located. A&R and Best are both headquartered in Hoquiam,

27   Washington.

28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

141.    The map below shows the locations of CSSB, the three Manufacturer Defendants, and each of the Non-Defendant Co-Conspirators (represented by the blue dots):

*Figure 7: Locations of CSSB, Manufacturer Defendants,*
*and Non-Defendant Co-Conspirators*



142.    The proximity of Defendants and the Non-Defendant Co-Conspirators provided ample opportunities to meet and discuss the pricing of Certi-Label™ CSS, as well as to conspire to jointly boycott manufacturers that discounted their Certi-Label™ CSS below the agreed-upon price levels.

**D.    The Defendants and Their Co-Conspirators Entered into a Conspiracy to Fix the Prices of Cedar Shakes & Shingles in the United States**

143.    On information and belief, no later than January 1, 2011 and continuing through the present, Defendants and their co-conspirators conspired to fix the prices of Certi-Label™ CSS sold into and in the United States.

144.    In the S&W Lawsuit, S&W alleged in its complaint: "Throughout the four years predating the filing of this complaint, Waldun's Curtis Walker and Anbrook's Brooke Meeker

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

have regularly conspired and colluded to fix prices for cedar shake and shingle products sold into the United States market and have encouraged other mill manufacturers to join in that price collusion."

145.    Kris Watkins, Chief of Operations of Watkins, submitted a declaration in support of the S&W Lawsuit. The declaration described a December 5, 2018 discussion between Kris Watkins and Waldun's Walker in which they discussed "shake and shingle pricing." Kris Watkins attested that he had decided to absorb some of the impact of a tariff rather than pass it all on to customers, and that "Mr. Walker told me that we should not have done this and that Waldun Forest Products never dropped their pricing."

146.    Len Taylor, President and Owner of Taylor Forest Products, also submitted a declaration in support of the S&W Lawsuit. This declaration describes a visit Mr. Taylor made to G&R at an unknown point in the last five years, during which he visited with G&R's Sale Manager, Stuart Dziedzic ("Dziedzic"). According to Taylor, when he arrived, Dziedzic was finishing a phone call, and when he got off the phone, told Taylor that some competitors were being tough on him and wanted him to raise G&R's CSS prices.

147.    Taylor is 100% certain that Dziedzic told him that the call was from either Anbrook's Meeker or Waldun's Walker, but he cannot remember which of the two was the person who called Dziedzic. It was clear, however, from Dziedzic's statements to Taylor that Dziedzic was referring to collective pressure from both Defendant Anbrook and Defendant Waldun. G&R's Dziedzic submitted a declaration in opposition to S&W's motion for a preliminary injunction in the S&W Lawsuit but made no attempt to refute Taylor's sworn declaration. Likewise, Anbrook's Meeker submitted a declaration in opposition to S&W's motion for a preliminary injunction in the S&W Lawsuit, but also made no attempt to refute Taylor's sworn declaration. In opposing S&W's motion for a preliminary injunction, CSSB said that S&W's price-fixing allegations were "irrelevant" and that in any event, if there was such a conspiracy, S&W benefited from it.

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

148.    Defendants' and co-conspirators' collusive conduct had the intended purpose and effect of increasing the price of cedar shakes and shingles sold to Plaintiff and the other members of the Class.

**E.    The Defendants and Their Co-Conspirators Agreed to Jointly Boycott Price Discounters**

149.    On information and belief, no later than January 1, 2011 and continuing through the present, Defendants and their co-conspirators conspired to expel manufacturers from the CSSB that sold Certi-Label™ CSS into and in the United States below cartelized price levels.

150.    CSSB and the Manufacturer Defendants' exclusionary conduct is so well known in the CSS industry that they are colloquially referred to as the "Mafia."

151.    In the S&W Lawsuit, S&W allege that it was expelled from the CSSB for selling Certi-Label™ CSS at discount prices during periods of low demand. According to S&W, it was forced out of the CSSB during a "hastily convened special meeting by telephone conference call" involving presently unknown members of the CSSB Board of Directors. S&W maintains that the purported reason for its expulsion—a mislabeling violation—is false, pretextual, and unsupported: "Despite these facts, several CSSB Directors who are executives with Waldun, Anbrook and a number of other large member mills successfully secured a three-fourths vote in favor of terminating S&W's CSSB membership, not because of a mislabeling violation but in pursuit of their conspiracy to eliminate a competitor unwilling to engage in price fixing or collusion."

152.    As noted above, Kris Watkins, Chief of Operations of Watkins, submitted a declaration in support of the S&W Lawsuit. In that declaration, Kris Watkins attested to a conversation about CSS pricing with Waldun's Walker in which "Mr. Walker argu[ed] that CSSB mills should hold their prices at consistent levels." When Kris Watkins stated his disagreement "because the smaller self-financed mills needed to drop their prices during times like winter slowdowns when cash flow was reduced in order to generate operating cash, Mr. Walker stated that he did not believe that many CSSB mills would do this." Kris Watkins then stated that S&W engaged in discounting "from time to time" in order "to generate the cash flow," to which

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Waldun's Walker became "very agitated" and exclaimed: "'yeah, well we just need to get rid of that guy.'"

153.    The Former CSSB Members include at least another twenty (20) CSS manufacturers (in addition to S&W) that have left the CSSB since 2012. A large (but yet unknown) number of these Former CSSB Members are no longer in business.

154.    A significant number of these Former CSSB Members were expelled from the CSSB because they refused to comply with the conspiracy and the arbitrary whims of the Manufacturer Defendants. For example, Plaintiff is aware of at least one other CSS manufacturer that the Defendants expelled from the CSSB because it refused to comply with a demand made by one of the Manufacturer Defendants regarding the price at which it would sell Certi-Label™ CSS.

### F.    The Group Boycott Strengthened the Conspiracy

155.    The economic consequences for would-be competitors that are expelled from the CSSB are significant and potentially fatal to their business. CSSB members therefore joined the Bureau, remained in it, and participated in the alleged conspiracy in order to avoid this fate. A coerced price fixing agreement is actionable under the Sherman Act.

156.    For instance, in the S&W Lawsuit, S&W alleged that it would be forced out of business in a matter of months if not re-admitted to the CSSB. S&W stated this was the case because it would be forced to charge 15-25% less for non-Certi-Label™ CSS than for Certi-Label™ CSS. In support of this allegation, S&W attached three invoices that showed price differences of between roughly 18% and roughly 38%.

157.    Invoice #00400105 (Order Date: 1/16/2019) showed a price of $145/square for Certi-Label™ CSS, and a price of $98/square for non-Certi-Label™ CSS of the same grade. This is a $47 (38.68%) difference in price. This invoice is depicted below.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**Figure 8: S&W Invoice #00400105**

| Description/Tally | Quantity | Price |
|---|---|---|
| #1 1/2x18H/S&R/S MED CUTBACK | 17.40 SQUAR | 120.00/SQUAR |
| cssb stock S&W | | |
| Option for more if more is found | | |
| #1 3/4x18 H/S&R/S HEAVY | 15.20 SQUAR | 145.00/SQUAR |
| CSSB stock S&W | | |
| Option for more if more is found | | |
| #1 3/4x18 H/S&R/S HEAVY CCA | 4.60 SQUAR | 10.00/SQUAR |
| various stock, weathered Canadian stock/ culls for cleanup | | |
| #1 1/2 x 24 H/S & R/S Medium CCA | 11.00 SQUAR | 180.00/SQUAR |
| Island stock/ Non Bureau | | |
| S&W Order # 20190115 | | |
| #1 3/4x18 H/S&R/S HEAVY | 64.00 SQUAR | 98.00/SQUAR |
| QAI stock / S&W | | |

158.    Invoices #0049063 (Order Date: 2/18/2019) and #00400218 (Order Date: 3/7/2019) show a price of $240/square for Certi-Label™ CSS, and a price of $200/square for non-Certi-Label™ CSS of the same grade. This is a $40 (18.18%) difference in price. These invoices are depicted below.

**Figure 9: S&W Invoice #0049063 and Invoice #00400218**

| Description/Tally | Quantity | Price |
|---|---|---|
| #1 3/4x24 H/S&R/S HEAVY | 306.00 SQUAR | 240.00/SQUAR |
| Delayed shipment due to Weather/Freeze | | |
| Advise when i need to ship last possible minute | | |
| S&W CSSB stock | | |

| Description/Tally | Quantity | Price |
|---|---|---|
| #1 3/4x24 H/S&R/S HEAVY | 144.00 SQUAR | 200.00/SQUAR |
| S&W QAI stock, DET "Select" (equall quality to S&W/CSSB | | |
| shipment appx 2 weeks | | |

159.    In addition, an agricultural economist who submitted a declaration in the S&W Lawsuit supported the existence of a price differential between Certi-Label™ CSS and non-Certi-Label™ CSS of 15-25%.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**G.      The Alleged Conspiracy was Economically Plausible and Normal Market Forces Cannot Explain the Pricing for Certi-Label™ CSS**

160.    As shown in greater detail below, since at least January 1, 2011, there has been a consistent increase in the prices of CSS that cannot be fully explained by normal market forces, such as increased demand or lower supply.

161.    The chart below shows the weekly price of Number 1 grade CSS from January 1, 2011 through December 31, 2018.[3] The prices for these products have surpassed pre-recession levels, and certain products have experienced 10 percent year-over-year price increases.



*Figure 10: Pricing of #1 Western Red Cedar Shakes & Shingles*



---

[3] The Price data reflected in these two charts is from *Random Lengths*, which reports pricing on a weekly basis and describes itself as "the most widely circulated and respected source of information for the wood products industry, provid[ing] unbiased, consistent, and timely reports of market activity and prices . . . ."

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

162.    The pricing behavior of lower-quality Number 2 grade CSS is no different. As shown in the below chart, the weekly prices of these products have increased significantly since January 1, 2011.



*Figure 11: Pricing of #2 Western Red Cedar Shakes & Shingles*

163.    The steady increase in prices for CSS contrasts with a cyclical, though generally consistent on a year-over-year basis, British Columbia Western Red Cedar harvest. The chart below compares the British Columbia Western Red Cedar harvest against the price per square for Western Red Cedar shakes and shingles and shows that while the harvest pattern has remained consistent throughout the Class Period, the prices for the end product have consistently risen:

CLASS ACTION COMPLAINT - 36

1

*Figure 12: British Columbia WRC Harvest Versus WRC-CSS Pricing*



164.    As one would expect, the year-over-year consistency in Western Red Cedar harvest

has resulted in much lower price increases on the supply side. The chart below shows: (a) the

Producer Price Index ("PPI") for commodity data for Lumber and wood products, covering wood

ties, siding, shingles, and shakes, and contract sawing of logs owned by others; (b) PPI for industry

data for sawmills, covering wood ties, siding, shingles, and shakes, and contract sawing of logs

owned by others, not seasonally adjusted; (c) Average Canadian export price index for coniferous

industrial roundwood other than fir or spruce or pine (USD); and (d) the index of the British

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Columbia Western Red Cedar harvest. The tightness of these various indices demonstrates a close

relationship between supply and price.

*Figure 13: Producer Price Indices for Softwood Lumber and Sawmill*
*Shake & Shingle Products; Price Index of Canadian Softwood Exports;*
*and Index of British Columbia WRC Harvest*



165.    Comparing the indices of the average supply input prices[4] and the average CSS

price shows that the prices for CSS have grown far more rapidly than the prices of other softwood

[4] The average of (a) the Producer Price Index ("PPI") for Commodity data for Lumber and wood
products, covering Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by
others; (b) PPI for industry data for Sawmills, covering Wood ties, siding, shingles, and shakes,
and contract sawing of logs owned by others, not seasonally adjusted; and (c) Average Canadian
export price index for coniferous industrial roundwood other than fir or spruce or pine (USD).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

lumber inputs and the price of Canadian timber. This divergence is shown in the below chart:

*Figure 14: Average Price Indices of Supply Inputs and of CSS*



166.    This anomalous pricing behavior was also acknowledged by the U.S. government. In a December 2017 U.S. International Trade Commission ("USITC") report entitled *Softwood Lumber Products from Canada*, the USITC wrote that while U.S. producers of softwood lumber generally reported the need to reduce prices and roll back announced price increases to compete with Canadian imports and that they had lost sales to Canadian competitors, U.S. producers and importers in the cedar/redwood market reported that since January 1, 2014 they generally: (a) had not reduced prices in order to compete with Canadian producers of cedar/redwood products, (b) had not rolled back announced price increases to compete with Canadian producers of

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    cedar/redwood products, and (c) had not lost sales to Canadian producers of these products.

2        167.    Finally, the chart below shows a monthly comparison of the inventory value of CSS

3    and the value of manufactured CSS. This chart shows that production of new CSS began to decline

4    in 2009 and remained comparatively low through 2016. This decline began to stabilize in the 2011

5    to 2012 period, and thereafter, production increased substantially. In a competitive market,

6    manufacturers of CSS would opt to sell this product at a lower price rather than accumulate

7    inventory, yet, as shown above, the price for CSS was increasing significantly during this same

8    period. The build-up of inventory at the same time that manufacturers of CSS were increasing their

9    prices is indicative of anti-competitive practices by these manufacturers.

10       *Figure 15: Inventory Value and Manufacturing for Canadian Shingle & Shake Mills*



22       168.    The above charts and resulting analysis reveal that prices for CSS have displayed a

23   consistent increase since 2011 when, all else being equal, one would expect a decline as explained

24   below.

25       169.    Tariffs recently being considered for softwood lumber imports from Canada also

26   do not explain the price increase in cedar shakes and shingles, since those tariffs have not actually

27

28

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

been implemented. While a September 2018 decision from the International Trade Administration ("ITA") suggested that these producers were encompassed by a January 2018 tariff order, manufacturers formed a Shake and Shingle Alliance ("SSA") to challenge the ITA's decision. On November 8, 2018, SSA sued to challenge the ITA decision in the Court of International Trade. Information from the International Trade Commission currently shows cedar shakes and shingles being free of any such tariff.

**H.      The CSS Market is Conducive to Collusion**

170.    The market for CSS has characteristics that make it conducive to collusion.

171.    *Vertical Integration*. Vertically integrated industries are highly susceptible to collusion because the dominant firms control all or nearly all aspects of the supply chain, and thus have the ability to coordinate on output and inventory levels and, ultimately, prices.

172.    The CSS industry has become highly vertically integrated, particularly as a result of the Manufacturer Defendants' acquisitions. For example, Defendant Waldun states on its website that it "has integrated the various aspects of cedar manufacturing, producing cedar lumber, shakes, and value-added rebutted and rejointed sidewall shingles."

173.    *Inelastic Demand*. Inelastic demand means that increases in price result in limited declines in quantity sold in the market. While demand for CSS is driven by residential and consumer construction, consumer demand for CSS would be unaffected by a small but significant, non-transitory increase in price (or "SSNIP"). Thus, demand for CSS is inelastic.

174.    Because the demand for CSS is inelastic, sellers of CSS, including the Manufacturer Defendants and their co-conspirators, can raise the prices of CSS above competitive levels without seeing a decline in sales revenue.

175.    *Commodity-Like Product*. Markets involving commodity-like products are more susceptible to collusive conduct because price is the primary basis on which sellers compete for sales and purchasers cannot differentiate one seller's product from another seller's product. Certi-Label™ CSS are undifferentiated, commodity-like products because each manufacturer's product (within a relevant product type, size, and grade) is interchangeable with the corresponding product

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of another CSSB manufacturer. This commoditization is all but assured by the CSSB-97 grading rules.

176. ***Lack of Significant Substitutes***. Certi-Label™ CSS are perceived by customers as high-end products that have a distinctive look and feel, and there are no significant substitutes for Certi-Label™ CSS. While there are potential substitute products—including non-Certi-Label™ CSS, asphalt shingle roofs, ceramic tile roofs, slate roofs, vinyl siding, or a different type wood siding—these products lack the unique characteristics of Certi-Label™ CSS (*e.g.*, durability and an appearance and texture that cannot be attained with modern products) and are not significant substitutes.

177. ***High Concentration***. The CSS industry has seen significant concentration over the past two decades, with the three Manufacturer Defendants accounting for more than 50% of the Certi-Label™ CSS production. Together with the Non-Defendant Co-Conspirators, the CSSB manufacturers control 100% of the market for Certi-Label™ CSS. The Manufacturer Defendants and their co-conspirators therefore possess enough market power to control prices and to exclude price competition.

178. ***Opportunities to Conspire***. The Defendants and their co-conspirators had ample opportunities to discuss, agree, and act on their anticompetitive scheme to artificially raise the price of Certi-Label™ CSS and to punish manufacturers that sold Certi-Label™ CSS at discounted prices. For example, as outlined above, the CSSB is controlled by the Manufacturer Defendants (through, in part, its weighted voting), the CSSB holds an Annual General Meeting to which all members are invited, the CSSB holds regular conference calls and in-person meetings (which include confidential/closed portions), and the CSSB holds various *ad hoc* meetings throughout the year. In addition (also as noted above), the Defendants and their co-conspirators are all within close proximity to one another.

179. ***High Barriers to Entry***. There are significant barriers to entering the CSS market, which makes it difficult for potential competitors to enter the market in a meaningful way. Specifically, in order to effectively compete for the necessary raw materials (the prices of which

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

are set through a competitive process), a CSS manufacturer must join the CSSB so that they can secure the 15-20% price premium charged for Certi-Label™ CSS. And once a member of the CSSB, pursuant to the "All or Nothing Rule," the manufacturer is unable to produce or sell lower-priced non-Certi-Label™ product. In any event, even if an upstart or potential competitor managed to gain entry to CSSB to participate in the CSS market, that competitor could not deviate from the price-fixing conspiracy implemented by the Defendants and gain substantial market share through price competition. Otherwise, that competitor would be expelled from the CSSB, as was S&W in December 2018.

## VI.   CLASS ACTION ALLEGATIONS

180.   Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3), on behalf of itself and all others similarly situated. The "Class" is defined as follows:

> All persons or entities who purchased Certi-Label™ CSS directly from Defendants, their Co-Conspirators, or their agents in the United States during the period from at least and including January 1, 2011 until the effects of the unlawful conduct are adjudged to have ceased.

181.   Specifically excluded from the Class are the Defendants, their co-conspirators, and their agents; any officers, directors, or employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant or co-conspirator. Also excluded from the Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

182.   ***Ascertainability***. The foregoing Class is readily identifiable from the records of Defendants and their co-conspirators.

183.   ***Numerosity***. Plaintiff does not know the exact number of the members of the Class because such information presently is in the exclusive control of Defendants and their co-conspirators. Plaintiff believes that due to the volume of United States commerce, there are hundreds or thousands of geographically-dispersed members of the Class such as joinder of all

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    members of the Class is impracticable.

2        184.    *Typicality*. Plaintiff's claims are typical of the claims of the members of the Class

3    because Plaintiff and members of the Class sustained damages arising out of Defendants and their

4    co-conspirators' common course of conduct in violation of law as complained herein. The injuries

5    and damages of each member of the Class was directly caused by the Defendants and their co-

6    conspirators' wrongful conduct.

7        185.    *Adequacy*. Plaintiff will fairly and adequately protect the interests of the members

8    of the Class in that Plaintiff's interests are aligned with, and not antagonistic to, those of the other

9    members of the Class. Plaintiff has retained counsel competent in class action litigation, including

10   antitrust class action litigation.

11       186.    *Commonality & Predominance*. Common questions of law and fact exist as to all

12   members of the Class that predominate over any questions affecting solely individual members of

13   the Class. These predominating common questions of law and fact include the following:

14           a.    Whether Defendants and their co-conspirators entered into a conspiracy to

15                 artificially inflate the price of Certi-Label™ CSS in violation of the

16                 Sherman Act;

17           b.    Whether Defendants and their co-conspirators entered into a conspiracy to

18                 boycott CSS manufacturers that discounted Certi-Label™ CSS below the

19                 agreed-upon price;

20           c.    Whether Defendants' conduct had an anticompetitive and manipulative

21                 effect on the price of Certi-Label™ CSS during the Class Period;

22           d.    Whether Defendants' conduct negatively affected the price of Certi-

23                 Label™ CSS purchased directly from the Defendants or their co-

24                 conspirators during the Class Period; and

25           e.    The appropriate measure of damages for the injury sustained by Plaintiff

26                 and members of the Class as a result of Defendants and their co-

27                 conspirators' unlawful activities.

28

CLASS ACTION COMPLAINT - 44

187. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

188. *Manageability*. The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendants. Plaintiff does not anticipate any difficulty in the management of this action as a class action.

## VII.    ANTITRUST INJURY

189. In an efficient market, manufacturers of CSS would compete on the basis of price to keep or increase their market share. For example, a company might choose to discount its CSS during periods of low demand.

190. Defendants' anticompetitive conduct had the following effects, among others:

    a.    Price competition has been restrained or eliminated with respect to Certi-Label™ CSS;

    b.    The prices of Certi-Label™ CSS have been fixed, raised, stabilized, or maintained at artificially inflated levels; and

    c.    Purchasers of Certi-Label™ CSS have been deprived of free and open competition among CSS manufacturers.

191. The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, or maintain the price of Certi-Label™ CSS and, as a direct and foreseeable result,

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiff and members of the Class paid supra-competitive prices for Certi-Label™ CSS during the Class Period.

192.    By reason of the alleged violations of the antitrust and other laws, Plaintiff and members of the Class have sustained injury to their businesses or property, having paid higher prices for Certi-Label™ CSS than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result have suffered damages.

193.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VIII.    FRAUDULENT CONCEALMENT & TOLLING

194.    Plaintiff had neither actual nor constructive knowledge of the facts constituting its claim for relief.

195.    Plaintiff and members of the Class did not discover, and could not have discovered through the existence of reasonable diligence, the existence of the alleged conspiracy alleged herein until on or about February 13, 2019, the date on which the S&W Lawsuit was filed.

196.    Defendants and the Non-Defendant Co-Conspirators engaged in a secret conspiracy that did not reveal facts that would put Plaintiff and members of the Class on inquiry notice that there was a conspiracy to fix the prices of Certi-Label™ CSS and to expel price discounters from the CSSB.

197.    Accordingly, Plaintiff could not have had either actual or constructive knowledge of the conspiracy until the S&W Lawsuit was filed.

198.    Furthermore, Defendants and the Non-Defendant Co-Conspirators took active steps to conceal the conspiracy and to prevent Plaintiff and members of the Class from discovering the conspiracy's existence until the S&W Lawsuit was filed. For instance, in order to discuss and implement the conspiracy, Defendants and their co-conspirators met in private at their places of business and during CSSB meetings that were not open to the public. They also discussed the conspiracy during private telephone calls. Finally, Defendants and their co-conspirators did not reveal in their price increase announcements or otherwise that a reason for the price increases and

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  price levels during the Class Period was the anticompetitive conspiracy described herein.

2      199.    Because the alleged conspiracy was kept secret, Plaintiff and members of the Class

3  were unaware of this unlawful conduct alleged herein and did not know that the prices they paid

4  for Certi-Label™ CSS were artificially high during the Class Period.

5  IX.    **CLAIM FOR RELIEF**

6              **Section 1 of the Sherman Act (15 U.S.C. § 1):**

7              **Unlawful Conspiracy in Unreasonable Restraint of Trade**

8      200.    Plaintiff realleges and incorporates herein by reference, as though fully set forth

9  here, all preceding paragraphs of this Complaint.

10     201.    Plaintiff brings this cause of action individually and on behalf of the Class.

11     202.    Manufacturer Defendants are horizontal competitors that unlawfully agreed with

12  one another and acted in concert not to compete on price, including agreements to fix prices for

13  Certi-Label™ CSS and to boycott or threaten to boycott market participants, including other CSS

14  manufacturers, that were or considered selling CSS at lower prices. Defendants' conduct

15  constitutes an unlawful conspiracy that is *per se* unlawful.

16     203.    Manufacturer Defendants worked with and through Defendant CSSB and the Non-

17  Defendant Co-Conspirators to facilitate and accomplish their unlawful agreement to fix prices for

18  Certi-Label™ CSS and to boycott or threaten to boycott market participants, including other CSS

19  manufacturers, that were or considered selling CSS at lower prices.

20     204.    Defendants' conspiracy has caused Plaintiffs and members of the Class Class

21  antitrust injury in the form of payment of artificially inflated prices for Certi-Label™ CSS as a

22  result of the conspiracy alleged herein. These injuries, in the form of payment of overcharges, are

23  quintessential antitrust injuries flowing directly from the unlawful conduct alleged herein.

24     205.    There are no procompetitive justifications for Defendants' conduct. Even if there

25  were such justifications, there are clear less restrictive alternatives to achieve them, and

26  Defendants' conduct unreasonably restrains trade.

27

28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

A.    That the Court determine that this action may be maintained as a class action under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed as class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

B.    That the unlawful conduct alleged herein be adjudged and decreed to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act;

C.    That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining the conspiracy alleged in the Complaint;

D.    That Plaintiff and the Class recover damages, as provided under federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants in an amount to be trebled in accordance with such laws;

E.    That Plaintiff and the Class recover their costs of the suit, including attorneys' fees, as provided by law; and

F.    That the Court direct such further relief it may deem just and proper.

## XI.    JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: April 17, 2019

**TOUSLEY BRAIN STEPHENS PLLC**

By:    */s/ Kim D. Stephens*
       Kim D. Stephens, WSBA #11984

       */s/ Kaleigh N. Powell*
By:    Kaleigh N. Powell, WSBA #52684

       1700 Seventh Avenue, Suite 2200
       Seattle, WA 98101
       Telephone: (206) 682-5600

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Facsimile: (206) 682-2992
Email: kstephens@tousley.com
        kpowell@tousley.com

Paul Gallagher*
James J. Pizzirusso*
Nathaniel C. Giddings*
HAUSFELD LLP
1700 K. St., NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: pgallagher@hausfeld.com
        jpizzirusso@hausfeld.com
        ngiddings@hausfeld.com

Bonny Sweeney*
Samantha Stein*
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-217-6813
Email: bsweeney@hausfeld.com
        sstein@hausfeld.com

Larry D. Lahman*
Roger L. Ediger*
MITCHELL DeCLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
Tel.: 580-234-5144
Fax: 580-234-8890
Email: larry.lahman@sbcglobal.net
        rle@mdpllc.com

*Counsel for Plaintiff and the Putative Direct Purchaser Class*

---

* *pro hac vice* application to be filed

CLASS ACTION COMPLAINT - 49